**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Timothy Scott FLEMING, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 28, 2001.
Filed June 17, 2002.

Before DEL SOLE, P.J., ORIE MELVIN, and BROSKY, JJ.

MELVIN, J.

¶ 1 Appellant, Timothy Scott Fleming, appeals from the judgment of sentence following the trial court's denial of his Motion for Modification of Sentence. Appellant's sole question on appeal challenges the portion of the sentencing court's order subjecting him to the lifetime registration requirements pursuant to 42 Pa.C.S.A. §§ 9791–9799.7 ("Megan's Law II"). For the reasons that follow, we affirm the judgment of sentence.

¶ 2 The facts and procedural history are as follows. On August 9, 2000, Appellant pled guilty to one count of attempted criminal homicide [1] and one count of involuntary deviate sexual intercourse [2] for an incident that occurred on September 18, 1999, in which Appellant forced his penis into the mouth of a ten-year-old girl and then choked her until she was rendered unconscious. The trial court directed that Appellant submit to an assessment by the Sexual Offenders Assessment Board. On December 6, 2000, Appellant was sentenced to seven and one-half (7½) to fifteen (15) years' incarceration with credit for

1. 18 Pa.C.S.A. §§ 901/2501(a).

2. 18 Pa.C.S.A. § 3123(a)(1).

time served for the charge of attempted criminal homicide and five (5) to fifteen (15) years' incarceration with credit for time served for the offense of involuntary deviate sexual intercourse. The sentencing court further ordered that the sentence for involuntary deviate sexual intercourse run concurrent with the sentence for attempted criminal homicide. Also, on December 8, 2000, the sentencing court entered an order captioned "Notification of Registration as a Sexual Offender" wherein the court notified Appellant that because he had been convicted of involuntary deviate sexual intercourse, he was required to register with the Pennsylvania State Police for the remainder of his life. 42 Pa.C.S.A. § 9795.1(b)(2).

¶ 3 On December 13, 2000, Appellant filed a Motion for Modification of Sentence wherein he asserted that he should be subjected to a registration requirement of only ten years.[3] Following a hearing held on February 5, 2001, the sentencing court entered an order denying Appellant's motion based upon its determination that 42 Pa.C.S.A. § 9795.1 applied to Appellant.[4] Appellant then filed this timely appeal.

¶ 4 The sole issue Appellant raises on appeal for our review is:

Did the lower court err in finding defendant was subject to the lifetime registration provision of 42 Pa.C.S.A. § 9795.1?

Appellant's brief at 3.[5]

■ ¶ 5 Initially, we note: "[a] trial court's application of a statute is a ques-

tion of law, and our standard of review is plenary." *Commonwealth v. Richardson,* 784 A.2d 126, 129 (Pa.Super.2001), *appeal denied,* —— Pa. ——, 793 A.2d 907 (2002) (citation omitted). Moreover, our review is limited to determining whether the trial court committed an error of law. *Id.* Pennsylvania first adopted its version of Megan's Law on October 24, 1995, and the registration portions of the statute took effect on April 21, 1996. It was later amended on May 10, 2000, and the amended version became effective on July 9, 2000. Pursuant to the amended version of Megan's Law, "Megan's Law II," an individual convicted of 18 Pa.C.S.A. § 3123 is subject to the lifetime registration directives of the statute. *See* 42 Pa.C.S.A. § 9795.1(b)(2). The registration section of the current statute provides, in pertinent part, the following:

### § 9795.2. Registration procedures and applicability

(a) **Registration.** -

(1) Offenders and sexually violent predators shall be required to register all current residences or intended residences with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation.

---

3. Pursuant to the earlier version of Megan's Law, an individual convicted of 18 Pa.C.S.A. § 3123 was required to register for ten years. *See former* 42 Pa.C.S.A. § 9793(a), (b).

4. Although the judgment of sentence was entered December 6, 2000, this appeal is timely pursuant to Pa.R.Crim.P. 720, since it was filed within thirty (30) days after the trial court entered its Order denying Appellant's Motion for Modification of Sentence on March 6, 2001.

5. Appellant's phrasing of his issue on appeal is vaguely worded and does not specifically state that Megan's Law II was applied to him in a retroactive manner. However, upon careful review of the argument made in Appellant's brief we can only conclude that Appellant is claiming that the trial court's application of Megan's II is an *ex post facto* violation.

(2) Offenders and sexually violent predators shall inform the Pennsylvania State Police within ten days of a change of residence. Registration with a new law enforcement agency shall occur no later than ten days after establishing residence in another state.

42 Pa.C.S.A. § 9795.2(a)(1), (2). Further, § 9795.2(d) provides for criminal sanctions for individuals subject to the registration requirements of § 9795.1 who fail to register as required. *See* 42 Pa.C.S.A. § 9795.2(d)(1), (2).

¶ 6 In the instant case, the incident from which the offenses stem occurred on September 18, 1999. The registration provisions of Megan's Law II became effective on July 9, 2000 and were amended on December 20, 2000, effective February 18, 2001. Appellant pled guilty to attempted criminal homicide and involuntary deviate sexual intercourse on August 9, 2000, after the effective date of Megan's Law II. He was sentenced on December 6, 2000. As the offense of involuntary deviate sexual intercourse is listed as an offense requiring lifetime registration pursuant to Megan's Law II, the sentencing court provided Appellant with notice regarding the statute's registration requirements.

■■■ ¶ 7 Appellant asserts that the sentencing court erred in directing that Appellant is subject to the lifetime registration requirements of Megan's Law II, as he argues that Megan's Law II should not have been applied to him. Specifically, he contends that as Megan's Law I was in effect at the time Appellant committed the offense of involuntary deviate sexual intercourse, the ten-year registration requirements under that statute should have been applied. In support of his argument, he

asserts that the application of the lifetime registration requirement of Megan's Law II as applied to him constitutes an *ex post facto* violation.[6]

■■■ ¶ 8 In addressing Appellant's claim, we note that "[a] state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" *Coady v. Vaughn,* 564 Pa. 604, 607 n. 2, 770 A.2d 287, 289 n. 2 (2001) (quoting *California Dept. of Corrections v. Morales,* 514 U.S. 499, 504–06, and 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)). This Court recently had the occasion to address the issue of whether a sex offender who committed the offense prior to the effective date of Megan's Law II was subject to its registration requirements in *Commonwealth v. Miller,* 787 A.2d 1036 (Pa.Super.2001). In *Miller,* the appellant pled guilty on July 14, 1997 in federal court to sexual exploitation of minors. After completing his prison sentence and moving to Pennsylvania, the appellant was informed by the Pennsylvania State Police that he was required to register as a sex offender. He then filed a writ of habeas corpus challenging the registration requirements of Megan's Law. The trial court determined that the crime that the appellant was convicted of in federal court was equivalent to a Pennsylvania crime for which the appellant was required to register under Megan's Law. On appeal, we determined the trial court was correct in concluding that the appellant had been convicted of a federal offense equivalent to a Pennsylvania offense for which he must register in Pennsylvania in accordance

6. As Appellant cites *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287 (2001), which references only the *ex post facto* clause of the United States Constitution, we limit our discussion accordingly.

with Megan's Law.[7] This Court further addressed the issue of whether the appellant was subject to the statute's mandates. *Id.* at 1039–40. We noted:

> Appellant further alleges that he is not subject to the registration requirements because the acts underlying his conviction occurred before the effective date of Megan's Law. This argument fails. Our Supreme Court has held that there is no violation of any *ex post facto* provision in requiring registration when the acts underlying an individual's conviction occurred prior to the effective date of the registration requirements. *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616, 617 (1999). The Court reasoned that the purpose of the legislature in requiring the registration of certain sex offenders was not punitive, but rather to promote public safety. *Id.* at 619. Accordingly, Appellant is entitled to no relief.

*Id.* at 1040. As such, we determined that the appellant must register as a sex offender even though the acts underlying his conviction occurred before the effective date of Megan's Law.[8]

¶ 9 Even though the appellant in *Miller* was subject to a ten-year registration period, we find the analysis in *Miller* persuasive in the instant case. We note that in this case the lifetime registration requirements for individuals convicted of 18 Pa. C.S.A. § 3123 were in effect at the time of Appellant's plea and sentencing. Further, we find that the increased registration period provided by Megan's Law II from ten years to the individual's lifetime does not constitute a greater burden upon the individual required to register such that the requirement rises to the level of punishment. In reaching this conclusion, we employ the *Artway/Verniero* test as set forth in *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999).[9]

¶ 10 Under the *Artway/Verniero* test, a statutory provision will be considered punishment where any of the following three (3) criterion are found: "(1) the legislature's actual purpose is punishment, (2) the objective purpose is punishment, or (3) the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment." *Gaffney*, 557 Pa. at 331, 733 A.2d at 618 (citation omitted). In examining the first prong of the test, the Supreme Court in *Gaffney* initially concluded that the actual purpose of Megan's Law I was not punishment. Upon examining the statute's declaration of purpose, the Supreme Court determined that "the legislature's stated intent was to provide a system of registration and notification so that relevant information would be available to state and local law enforcement officials in order to protect the safety and general welfare of the public." *Gaffney*, 557 Pa. at

---

7. Although the trial court in *Miller* determined that the appellant had been convicted of an offense similar to 18 Pa.C.S.A. § 5903(a)(3), on appeal we reached our conclusion on a different basis. This Court concluded that the appellant had been convicted of a crime that was substantially similar to 18 Pa.C.S.A. § 6312(c). *Miller*, 787 A.2d at 1039. Therefore, the appellant was subject to a registration period of ten years pursuant to 42 Pa.C.S.A. § 9795.1(a)(1). *Id.*

8. We note that the Court in *Miller* analyzed the appellant's arguments in relation to Megan's Law II, which was in effect at the time the appellant in *Miller* was first required to register.

9. In *Gaffney*, the Supreme Court adopted this test in accordance with the three-prong analysis set forth in *Artway v. Attorney General* 81 F.3d 1235 (3d Cir.1996), and in *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). *Gaffney*, 557 Pa. at 332, 733 A.2d at 619.

333, 733 A.2d at 619. Although *Gaffney* was decided under Megan's Law I, we note that the declaration of policy section of Megan's Law II utilizes the same wording as the equivalent section in Megan's Law I. Therefore, we conclude, in accordance with our Supreme Court in *Gaffney*, that the legislature's actual purpose in enacting the registration portion of Megan's Law II was to protect the safety of the public and not to serve as punishment.

¶ 11 Next, we must consider whether the objective purpose of the registration portion of Megan's Law is punitive. The *Gaffney* Court set forth the following factors to be taken into account when considering this prong of the test as follows:

> The "objective" prong of this test focuses on "whether analogous measures have traditionally been regarded in our society as punishment," and has three subparts: (A) "proportionality—whether the remedial purpose of [the measure] ... can explain all the adverse effects on those involved," (B) whether the measure has been historically considered punishment, and (C) whether the measure serves both a remedial and a deterrent purpose. If question (C) is answered in the affirmative, then a measure will be considered punitive if: (a) the "deterrent purpose is an unnecessary complement to the measure's salutary operation," (b) "the measure is operating in an unusual manner inconsistent with its historically mixed purposes," or (c) "the deterrent purpose overwhelms the salutary purpose."

*Gaffney*, 557 Pa. at 334, 733 A.2d at 619–20 (quoting *Commonwealth v. Gaffney*, 702 A.2d 565, 567 (Pa.Super.1997)). In analyzing this prong, the *Gaffney* Court noted that the *Artway* Court observed that "registration is a common and long standing regulatory technique with a remedial purpose." *Id.* (quoting) *Artway v. Attorney General*, 81 F.3d 1235, 1264–65 (3d Cir. 1996) (further citations omitted).

¶ 12 Additionally, our Supreme Court in *Gaffney* recognized:

> The solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register. Registration may allow officers to prevent future crimes by intervening in dangerous situations.... The registrant may face some unpleasantness from having to register and update his registration. But the remedial purpose of knowing the whereabouts of sex offenders fully explains the registration provision just as the need for dinner fully explains the trip out into the night. And the means chosen—registration and law enforcement notification only—is not excessive in any way. Registration, therefore, is certainly "reasonably related" to a legitimate goal: allowing law enforcement to stay vigilant against possible re-abuse.

*Gaffney*, 557 Pa. at 334–35, 733 A.2d at 620 (quoting *Artway*, 81 F.3d at 1265).

¶ 13 Finally, the *Gaffney* Court noted that a historical analysis of registration provisions provides that these provisions are not considered to be punishment and that as registration provisions historically have a salutary purpose, any incidental deterrent effects of the registration of sex offenders would not invalidate a registration requirement. 557 Pa. at 335, 733 A.2d at 620 (citing *Artway, supra* at 1265–66). Accordingly, the Supreme Court in *Gaffney* concluded that the concerns of the appellant in that case with regard to the objective effects of the registration provision in Megan's Law I had no merit. 557 Pa. at 336, 733 A.2d at 621. Specifically, the Court observed that pursuant to the registration requirements of Megan's Law I, a registrant's information is given to the chief law enforcement officer of the police

department with primary jurisdiction where the registrant resides, and the information is not disseminated to the general public. *Id.* Thus, the *Gaffney* court concluded that the objective purpose of the registration provisions is not punitive. *Id.*

¶ 14 Similarly, we find that the objective purpose of the registration provisions of Megan's Law II is not punitive in nature. The requirements provide that offenders such as Appellant must register "all current residences or intended residences with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation." 42 Pa.C.S.A. § 9795.2(a)(1). Further, offenders are required to inform the state police of a change of address within ten days. 42 Pa.C.S.A. § 9795.2(a)(2). Also, the Pennsylvania State Police must verify the residences of offenders by means of a verification form for the required registration period, and the offender is required to appear at the police station within ten days of receipt of the form in order to fill out the form and be photographed. 42 Pa.C.S.A. § 9796(b). The Pennsylvania State Police are required to provide the registration information to the chief law enforcement officer of the police department of the municipality where the offender resides. 42 Pa.C.S.A. §§ 9795.2(c); 9799.1(4).

¶ 15 We stress that the relevant provisions of Megan's Law II are similar to the registration provisions of Megan's Law I found to be non-punitive by the Supreme Court in *Gaffney.* We find that the mere fact that Megan's Law II sets forth a lifetime registration requirement for individuals convicted of committing certain offenses which were subject to a ten-year registration requirement under Megan's Law I does not effectuate such a change

that the registration portion of the statute now has an objective purpose that is punitive. The registration requirements for offenders such as Appellant have not changed, they merely exist for a longer period of time. As such, we conclude that the objective purpose of the registration requirements of Megan's Law II does not constitute punishment.

¶ 16 Finally, pursuant to the third prong of the test, we must determine whether the statute's effects are so harsh that as a matter of degree that the statute constitutes punishment. In *Gaffney,* our Supreme Court concluded that the registration portions of the statute were non-punitive. *Gaffney,* 557 Pa. at 336, 733 A.2d at 621. The *Gaffney* Court reasoned that because the only information the appellant was required to provide was his address, which was given only to law enforcement personnel, the burden imposed upon the appellant was not so significant as to constitute punishment. *Id.* The Court concluded: "[n]otwithstanding the minor inconvenience Appellant may experience in verifying his address over a ten year period, it is difficult to fathom how the effects of this requirement could be characterized as 'so harsh' as constituting punishment for purposes of the Ex Post Facto Clause, and we do not view them as such." *Id.*

¶ 17 Instantly, pursuant to Megan's Law II, Appellant must register for the remainder of his life. While it is clear that under Megan's Law II the inconvenience of verifying one's residence has been extended from ten years to the remainder of one's life for certain offenders, such as Appellant, we cannot discern how the extension of this time period effectuates such a change in the registration requirements that the effects of the provisions are so harsh that they are now punitive. Appellant still has to provide the same informa-

tion in the same manner as set forth in Megan's Law I; he is merely subject to the requirements for a longer period of time. Moreover, the requirement that Appellant provide information to law enforcement will not have a large impact on Appellant's life. An extension of time alone does not render the effects of the registration requirements so harsh as a matter of degree that they now may be characterized as punishment. Additionally, we note that: "a registration requirement is perhaps the least burdensome among the various modes of regulation a state may seek to impose." *Commonwealth v. Mountain,* 711 A.2d 473, 477 (Pa.Super.1998), *appeal denied,* 561 Pa. 672, 749 A.2d 469 (2000) (quoting *Commonwealth v. National Federation of the Blind,* 18 Pa.Cmwlth. 291, 335 A.2d 832, 835 (1975), *aff'd* at 471 Pa. 529, 370 A.2d 732 (1977)). Accordingly, we conclude that the effects of the registration provisions of Megan's Law II are not so additionally burdensome as to constitute punishment.

¶ 18 Based upon the foregoing, we find the registration requirements of Megan's Law II do not serve to punish the offender but to help ensure the safety of the public. Accordingly, we conclude that the lifetime registration provision set forth in Megan's Law II, as applied to Appellant as a sexual offender, is not an *ex post facto* violation of the United States Constitution.

¶ 19 Judgment of sentence affirmed.